**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| ALEXIS J. ROMAN, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> WALGREEN COMPANY and the WALGREEN HEALTH AND WELFARE COMMITTEE, <br><br> Defendants. | **Civil Action No.: 1:25-cv-1504** <br><br><br> **Judge Steven C. Seeger** <br><br><br> **Magistrate Judge M. David Weisman** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS</u>**

Oren Faircloth, Esq.
Kimberly Dodson, Esq.
Mason Barney, Esq.
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
ofaircloth@sirillp.com
kdodson@sirillp.com
mbarney@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. *III*

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

    A.   ERISA's Statutory and Regulatory Framework ................................................. 2

    B.   Mandatory Compliance Criteria ................................................................. 3

    C.   Defendants' Discriminatory Surcharge is Unlawful ........................................... 3

III.  ARGUMENT ................................................................................................ 5

    A.   Legal Standard ................................................................................................ 5

    B.   Ms. Roman Has Article III Standing to Challenge the Unlawful Surcharge .................. 6

        1.   Ms. Roman Suffered a Concrete Financial Injury ....................................... 6

        2.   Ms. Roman's Injury is Fairly Traceable to Defendants' Conduct ............................ 7

        3.   Defendants' Disclosure Failures Are Substantive and Reinforce the Illegality of the

            Surcharge ................................................................................................ 9

    C.   Defendants Impose Arbitrary Restrictions That Violate the "Full Reward"

       Requirement ................................................................................................ 11

        1.   The "Full Reward" Means the Full-Year Benefit Nonsmokers Receive ................. 12

        2.   Defendants' Reliance on the 2014 FAQ is Misplaced ............................................. 14

    D.   Ms. Roman Has Alleged Breaches of Fiduciary Duties ........................................... 166

IV.  CONCLUSION ................................................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...............................................................................................5

*Brown v. Budz,*
    398 F.3d 904 (7th Cir. 2005) ...............................................................................11

*Burke v. Boeing Co.,*
    42 F.4th 716 (7th Cir. 2022) ................................................................................16

*Chi. Lawyers' Comm. for Civil Rights Under*
 *the Law, Inc. v. Craigslist, Inc.,*
    461 F. Supp. 2d 681, 692 n.9 (N.D. Ill. 2006) ....................................................15

*Christensen v. Harris County,*
    529 U.S. 576 (2000) .............................................................................................15

*Cunningham v. Cornell Univ.,*
    145 S. Ct. 1020 (2025) ..........................................................................................8

*DaVita, Inc. v. Marietta Mem'l Hosp. Emple. Health Ben. Plan,*
    978 F.3d 326, 341 n.8 (6th Cir. 2020) ..................................................................6

*Debernardis v. IQ Formulations, Ltd. Liab. Co.,*
    942 F.3d 1076 (11th Cir. 2019) .............................................................................6

*Department of Education v. Brown,*
    600 U.S. 551 (2023) ..........................................................................................8, 9

*Dubuisson v. Stonebridge Life Ins. Co.,*
    887 F.3d 567 (2d Cir. 2018) ..................................................................................6

*Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.,*
    983 F.3d 307 (7th Cir. 2020) .................................................................................4

*Godfrey v. GreatBanc Tr. Co.,*
    No. 18-cv-7918, 2020 U.S. Dist. LEXIS 150336
    (N.D. Ill. Aug. 19, 2020) ................................................................................16, 17

*Howell v. Motorola, Inc.*,
  633 F.3d 552 (7th Cir. 2011) ........................................................................................ 16

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ....................................................................................................... 16

*Lax v. Mayorkas*,
  20 F.4th 1178 (7th Cir. 2021) ......................................................................................... 5

*Leigh v. Engle*,
  727 F.2d 113 (7th Cir. 1984) ........................................................................................ 16

*Lipari-Williams v. Mo. Gaming Co.*,
  339 F.R.D. 515 (W.D. Mo. 2021) .............................................................................. 8, 14

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ....................................................................................................... 16

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................... 6, 9

*McKeage v. Bass Pro Outdoor World, LLC*,
  943 F.3d 1148 (8th Cir. 2019) ........................................................................................ 6

*Mehlberg v. Compass Grp. USA, Inc.*,
  No. 24-cv-04179, 2025 U.S. Dist. LEXIS 84589
  (W.D. Mo. Apr. 15, 2025) ........................................................................................ 8, 14

*Neuma, Inc. v. E.I. DuPont De Nemours & Co.*,
  9 F. Supp. 2d 952 (N.D. Ill. 1998) ............................................................................... 16

*Placht v. Argent Tr. Co.*,
  No. 21-cv-5783, 2022 U.S. Dist. LEXIS 142993
  (N.D. Ill. Aug. 10, 2022) ............................................................................................... 16

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
  2 F.4th 1002 (7th Cir. 2021) ........................................................................................... 5

*Rud v. Liberty Life Assurance Co.*,
  438 F.3d 772 (7th Cir. 2006) ........................................................................................ 16

*Schaffer* v. *Weast*,
  546 U. S. 49 (2005) ......................................................................................................... 8

*Secretary of Labor v. Macy's, Inc.*,
  No. 1:17-cv-541 (S.D. Ohio) .................................................................................... 13, 15

*Sehie v. City of Aurora*,
    432 F.3d 749 (7th Cir. 2005) ................................................................. 15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................... 6, 10

*Svigos v. Wheaton Sec., Inc.*,
    No. 17-cv-04777, 2018 U.S. Dist. LEXIS 13992
    (N.D. Ill. Jan. 29, 2018) ...................................................................... 16

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................................... 6, 9, 10

*United States v. Rogers Cartage Co.*,
    794 F.3d 854 (7th Cir. 2015) ................................................................... 4

*Vallone v. CNA Fin. Corp.*,
    375 F.3d 623 (7th Cir. 2004) ................................................................. 17

*Williams v. Rohm & Haas Pension Plan*,
    497 F.3d 710 (7th Cir. 2007) ................................................................. 15

**Statutes**

29 U.S.C. § 1135 ............................................................................. 2, 15

29 U.S.C. § 1182 ................................................................................. 8

29 U.S.C. § 1191 ................................................................................. 2

42 U.S.C. § 300gg ............................................................................... 2

ERISA §§ 406 ................................................................................... 5

ERISA §§ 502 ................................................................................... 5

ERISA § 702 ................................................................................... 2

**Rules/Codes**

29 C.F.R. § 2510.3-102 ...................................................................... 5, 17

29 C.F.R. § 2590.702 ........................................................................*passim*

v

45 C.F.R. § 146.121 ...................................................................................................*passim*

**Other**

*Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*,
     78 Fed. Reg. 33158–170 (June 3, 2013) ......................................................................*passim*

## I.      **<u>INTRODUCTION</u>**

Defendants[1] argue that participants subjected to an unlawful tobacco surcharge lack standing unless they enrolled in the very program they allege is deficient. That position is unsupported by law or logic. ERISA grants standing to participants who suffer concrete financial harm from statutory violations, and Ms. Roman alleges exactly that. She paid higher premiums based on a health factor (tobacco use) under a wellness program that failed to comply with ERISA's regulatory requirements. Nothing in ERISA or Article III requires her to have enrolled in a defective program to challenge the financial injury she incurred.

Ms. Roman plausibly alleges that Defendants' wellness program violates ERISA on multiple fronts. It denied participants the "full reward" required by law, imposed arbitrary time limits on the availability of the reasonable alternative standard, and failed to provide adequate notice of how to avoid the surcharge. These deficiencies undermine ERISA's protections against discrimination based on health status. When an employer like Walgreen imposes arbitrary barriers making it harder to avoid the surcharge and obtain the full reward—despite clear guidance from Congress and the federal agencies tasked with interpreting and implementing the wellness program rules—participants are deterred from exercising their rights, and the purpose of the regulatory framework is frustrated. A wellness program that imposes a surcharge without meeting these legal requirements is categorically unlawful.

Defendants' final argument that Ms. Roman's fiduciary breach claims improperly challenge "plan design" is misplaced. She alleges that Defendants used unlawfully collected

---

[1] "Defendants" includes Walgreen Company ("Walgreen") and the Walgreen Health and Welfare Committee (the "Committee"). Defendants note that Walgreen Co. is incorrectly named as "Walgreen Corporation." Def. Br., 2 n. 3. While Plaintiff names Walgreen "Company" (not "Corporation") in the Complaint, she has no objection to correcting the caption to reflect the proper legal name of the entity and will amend accordingly if necessary.

surcharge funds to reduce Walgreen's own contributions to the Plan, failed to review the program's terms to ensure legal compliance, and failed to properly inform participants of the reasonable alternative standard. These are classic examples of fiduciary conduct subject to ERISA's duties of loyalty and prudence.

Because Plaintiff has plausibly alleged financial harm caused by violations of ERISA's substantive and fiduciary protections, the motion to dismiss should be denied in its entirety.

## II. BACKGROUND

### A. ERISA's Statutory and Regulatory Framework

ERISA's anti-discrimination provisions prohibit group health plans from discriminating against participants based on health-related factors, including tobacco use, unless the plan provides a compliant "program[] of health promotion and disease prevention." *See* ERISA § 702(b)(2)(B), 29 U.S.C. § 1182(b)(2)(B); *see also* 42 U.S.C. § 300gg-4(b)(2)(B).[2] To qualify for this narrow exemption, employers must strictly follow the regulations that define the conditions for a valid wellness program.[3]

The Final Regulations establish bright-line standards designed to ensure that health-contingent wellness programs do not serve as a proxy for health status discrimination. As the

---

[2] These provisions, incorporated into ERISA through the Public Health Service Act ("PHSA"), allow employers to offer premium differentials only if the associated wellness programs satisfy five mandatory criteria. *See Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158–170 (June 3, 2013) (hereinafter the "**Final Regulations**"); *see also* 29 C.F.R. § 2590.702(f) and 45 C.F.R. § 146.121(f). Conspicuously absent from Defendants' "Statutory and Regulatory Background" section is an explanation of the current regulatory framework governing "programs of health promotion." *See* Def. Br., 2–6. The Final Regulations, effective 2014 "set forth ***criteria*** for a program of health promotion or disease prevention . . . ***that must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33160 (emphases added).

[3] Congress tasked the Departments of Labor ("DOL"), Health and Human Services ("HHS"), and Treasury (collectively, the "Departments") with implementing these protections. *See* 29 U.S.C. § 1191c (authorizing the Secretary of Labor to "promulgate such regulations as may be necessary or appropriate to carry out the provisions of this part."); 29 U.S.C. § 1135 ("the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter.").

Departments explained, the Final Regulations ensure wellness programs are "not a subterfuge for discriminating based on a health factor." *See* Final Regulations, 33160. Plans that do not satisfy all five criteria cannot qualify for ERISA's exemption.[4]

### B. Mandatory Compliance Criteria

The Final Regulations impose five nondiscrimination requirements for health-contingent wellness programs:

1. Frequency of Opportunity to Qualify – Participants must have at least one chance per year to earn the reward or avoid the penalty. 45 C.F.R. § 146.121(4)(i).

2. Size of Reward – Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. 45 C.F.R. § 146.121(f)(4)(ii).

3. Reasonable Design – Programs must be reasonably designed to promote health and cannot be a subterfuge for discrimination.

4. Uniform Availability & Full Reward Requirement – Participants who meet the alternative standard must receive "the same, full reward" as non-smokers. Final Regulations, 33163; see also 45 C.F.R. § 146.121(f)(4)(iv).

5. Notice Requirement – "[A]ll plan materials describing the" tobacco premium differential must clearly inform participants of a reasonable alternative standard and must include a statement that a participant's physician's recommendations will be accommodated. 45 C.F.R. § 146.121(f)(4)(v).

These safeguards function as an integrated regulatory framework, designed to work in tandem to ensure wellness programs do not erect arbitrary or burdensome barriers that impede participants from accessing the alternative standard and avoiding unlawful health-based surcharges.[5]

### C. Defendants' Discriminatory Surcharge is Unlawful

Defendants' wellness program fails to satisfy both the "full reward" and notice requirements, and therefore does not qualify for ERISA's safe harbor. *See* Plaintiff's Complaint, ECF No. 1

---

[4] *See id.* n. 9 ("these rules set forth criteria for an ***affirmative defense*** that can be used . . . in response to a claim that the plan or issuer discriminated"); *see also* 45 C.F.R. § 146.121(f)(4) (stating that a "wellness program . . . does not violate the provisions of this section ***only if <u>all</u> of the following requirements are satisfied***" (emphases added)).

[5] *See* Final Regulations, 33160 ("[t]he intention of the Departments in these final regulations is that, regardless of the type of wellness program, ***every individual participating in the program should be able to receive the full amount of any reward or incentive***, regardless of any health factor." (emphasis added)).

("Compl."), ¶¶ 6–9, 33–45. Defendants impose an arbitrary and baseless 90-day deadline for participants to complete the alternative standard (its "365 Get Healthy Here" program) and withheld retroactive reimbursement from those who satisfied the standard after that cutoff. *Id.*, ¶¶ 33–34, 39–40. This directly contravenes the "full reward" requirement, which mandates that all participants who complete an alternative standard receive the same financial benefit as those who meet the initial standard, including reimbursement for surcharges paid prior to completion. *See* 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv).

Defendants also failed to disclose the availability of a reasonable alternative standard—and the fact that physician recommendations would be accommodated—in ***all*** plan materials describing the surcharge. *See* Compl., ¶¶ 35–37. The documents Defendants themselves attach confirm these deficiencies:[6] the communications lack the disclosures required by law, as alleged. The failure to provide compliant notice impairs participants' ability to understand and assert their rights, deters engagement with the alternative standard, and obstructs their access to avoid the surcharge.

---

[6] Defendants ask the Court to rely on various plan materials attached to their motion, including several "Tobacco-Free Program Rewards Resource" documents (ECF 24-12 through 24-15) and Open Enrollment Guides (ECF 24-07 through 24-10), asserting that these documents are incorporated by reference. Def. Br., 2 n.2. Doing so risks converting this motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (explaining that consideration of documents outside the pleadings may convert a Rule 12(b)(6) motion into one for summary judgment). Even if the Court considers these materials, they further support Plaintiff's claims because they confirm that the required disclosure regarding physician accommodations appears only in the Summary Plan Description ("SPD"), not in any of the tobacco-related guides or open enrollment resources that more directly govern participants' understanding at the time of enrollment. *See* ECF Nos. 12-07 through 24-15. Moreover, while the SPD contains the necessary disclosure language, none of the materials describe the alternative standard in a way that satisfies the regulatory requirements because they omit the critical restrictions Walgreens imposes (i.e., the 90-day deadline and denial of retroactive reimbursement). If the Court is inclined to dismiss any portion of Plaintiff's claim based on alleged notice or plan communications, Plaintiff respectfully requests the opportunity to obtain discovery concerning whether participants were ever provided with the SPD or any other compliant disclosures during the enrollment process. *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion" (citing Rule 12(d)).

Defendants also breached their fiduciary duties under ERISA and engaged in prohibited transactions by diverting participant-paid surcharges, not to reduce participant payments, but to reduce their own financial obligations to the Plan. Under 29 C.F.R. § 2510.3-102(a)(1), employee contributions become plan assets when withheld from wages, and by diverting those assets for corporate benefit, Defendants engaged in prohibited self-dealing in violation of ERISA §§ 406(a) and 406(b). Compl., ¶¶ 46–47, 68–69. Further, Defendants failed to monitor and review the terms of the wellness program to ensure compliance with ERISA and failed to communicate critical information to participants regarding the avenues available to avoid the surcharge. *Id.*, ¶¶ 70, 76. Ms. Roman, on her own behalf and on behalf of the Plan, seeks relief under ERISA §§ 502(a)(2) and 502(a)(3), including equitable restitution of surcharges, injunctive relief, disgorgement of improperly retained funds, and restoration of losses to the Plan. *See* Compl., ¶ 78.

## III. ARGUMENT

### A. Legal Standard

The allegations detailed above readily establish Ms. Roman's standing. Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6), arguing that she lacks standing and fails to state a claim. Both arguments fall short. In assessing a facial challenge under Rule 12(b)(1), the Court must accept the Complaint's factual allegations as true and view them in the light most favorable to the nonmoving party. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021). The same standard applies under Rule 12(b)(6). *Id*. "A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all reasonable inferences in the pleading party's favor." *Id.*, *11 (citing *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021)). Dismissal is appropriate only where the Complaint fails to plead "a plausible claim for relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claim is plausible where the facts alleged allow the Court to "draw the reasonable inference that the defendant is liable for

5

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ms. Roman need not prove her claims at this stage; she must simply allege facts that make them more than possible. Id.

### B. Ms. Roman Has Article III Standing to Challenge the Unlawful Surcharge

Defendants argue that Plaintiff lacks standing because she did not enroll in or attempt to complete its tobacco cessation program. Def. Br., 7. That argument misconstrues the nature of claim and misstates the legal standard for Article III standing. Ms. Roman challenges the imposition of a health-based surcharge without being offered a compliant wellness program. The discriminatory surcharge is the harm and that easily satisfies Article III.[7] She is not required to participate in the noncompliant program offered to her to challenge the legality of the surcharge. The injury occurred when she was forced to pay a surcharge that violated ERISA, not when she declined to engage with the wellness program. That is more than sufficient to confer standing.

### 1. Ms. Roman Suffered a Concrete Financial Injury

Ms. Roman has Article III standing because she alleges that Defendants caused her to pay a $750 annual surcharge based on her tobacco use, without offering a compliant wellness program as required by ERISA. *See* Compl. ¶¶ 38–40. That is a concrete, particularized, and actual economic injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Circuit courts across the country have found that overcharges or impermissible fees—even without engagement in the deficient program or product—is sufficient to confer standing.[8] Here, Defendants imposed an

---

[7] *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (holding that "monetary harms" are "obvious" and "traditional harms" that "readily qualify as concrete injuries under Article III."); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (an injury must be "'real' and not 'abstract'").

[8] Numerous circuit courts have found that plaintiffs who pay money under an unlawful scheme suffer a concrete economic injury sufficient for Article III standing on the basis that the injury flows directly from the defendant's decision to offer or charge for a noncompliant product or service. *See Debernardis v. IQ Formulations, Ltd. Liab. Co.*, 942 F.3d 1076, 1085–89 (11th Cir. 2019) (concluding that plaintiffs who paid for adulterated dietary products had standing, even though the product performed as intended); *DaVita, Inc. v. Marietta Mem'l Hosp. Emple. Health Ben. Plan*, 978 F.3d 326, 341 n.8 (6th Cir. 2020) *rev'd on other grounds*, 596 U.S. 880 (2022) (finding the plaintiffs had standing under § 1182 for harms such as "higher copayments, coinsurance amounts, and/or deductibles."); *McKeage v. Bass Pro Outdoor World, LLC*, 943

indisputably discriminatory surcharge without providing a program that satisfies the strict five mandatory requirements for wellness programs. *See* Compl. ¶¶ 6, 33–34, 38–39, 45. Instead, Defendants created arbitrary and legally unsupported barriers (i.e., the 90-day deadline for completion) that obstructed participants' ability to obtain the full reward and stripped them of key protections regarding ways to avoid the surcharge. That financial loss, caused by Defendants noncompliance, is exactly the kind of harm Congress and the Departments sought to prevent.

### 2. Ms. Roman's Injury is Fairly Traceable to Defendants' Conduct

Defendants argue that Plaintiff's injury stems from her own tobacco use, not their own conduct. Def. Br., 8–9. But that misses the point. Ms. Roman does not challenge the general proposition that tobacco users may pay more; she challenges Defendants' decision to impose a surcharge without providing a legally compliant alternative to avoid it, an alternative that ERISA and the regulatory framework are specifically designed to protect. The financial injury stems from the surcharge itself, which was imposed without offering a wellness program that satisfies ERISA's five regulatory criteria, including the "reasonable alternative standard," the "full reward" requirement, and mandatory notice provisions. *See* 45 C.F.R. § 146.121(f)(4)(i)–(v).

Defendants imposed arbitrary barriers—including a 90-day deadline, denial of retroactive reimbursement for those who missed that deadline, and a lack of required notices informing participants of their rights—which obstructed participants from obtaining the full reward. These barriers, which Defendants largely do not dispute (aside from notice), directly benefit them by reducing program participation and allowing them to retain more surcharge revenue. Ms. Roman,

---

F.3d 1148, 1150 (8th Cir. 2019) (finding Article III standing because "[p]aying a fee they should not have been charged was [] a concrete injury, not an abstract one that does not actually exist."); *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018) (finding the plaintiffs had standing to challenge premium payments on an insurance policy, even though the plaintiffs "did not suffer qualifying losses or make claims for coverage under their policies," on that basis that the policies were "void *ab initio*" under state law, making all premium payments unlawful).

as a participant in the Plan who was charged more for health coverage, has standing to challenge both the legality of the surcharge Defendants imposed and the arbitrary barriers they put on the wellness program to deter participation therein.

*Mehlberg* and *Lipari-Williams v. Mo. Gaming Co.*, 339 F.R.D. 515 (W.D. Mo. 2021), is on point. There, the court rejected the same argument Defendants assert, holding:

> Plaintiffs have alleged and presented facts showing that Defendant imposed a tobacco surcharge on them and on putative class members in violation of ERISA and its implementing regulations. . . . ***The standing requirement is satisfied here because Plaintiffs have alleged that Defendant caused them monetary loss by imposing a fee that was unlawful***.

*Id.*, 524 (emphasis added). The same reasoning applies here. The injury—the discriminatory surcharge—is traceable to Defendants' decisions to impose a discriminatory surcharge and their failure to administer a compliant wellness program.

Nor is Ms. Roman required to prove noncompliance at this stage. As the Supreme Court recently reaffirmed in *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020 (2025), "the burden of persuasion as to certain elements of a plaintiff 's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*." (emphasis in original) (citing *Schaffer* v. *Weast*, 546 U. S. 49, 57 (2005)). Ms. Roman has done precisely that. She challenges the 90-day deadline, the denial of retroactive reimbursement, and the lack of required notices, all of which obstructed her and other participants from obtaining the full reward. Because Defendants seek the protection of ERISA's statutory exemption for wellness programs, 29 U.S.C. § 1182(b)(2)(B) and 45 U.S.C. § 300gg-4(b)(2)(B), the burden is on them to demonstrate compliance with the regulatory framework. At this stage, Ms. Roman is not required to disprove compliance, only to plausibly allege financial harm coupled with a noncompliant program, which she has done.

Finally, Defendants' reliance on *Department of Education v. Brown*, 600 U.S. 551 (2023), is misplaced because that case involved plaintiffs who challenged a student loan forgiveness plan that did not apply to them, and their theory of standing depended on a speculative causal chain: that *if* the Department of Education had followed different procedures, it *might* have adopted a different program under a different statute, from which the plaintiffs *might* have benefitted. *Id.*, 566–67. The Court found this too attenuated to satisfy the traceability requirement. *Id*. As the Court noted, "[r]espondents are not claiming that they are injured by not being included in the Plan," nor were they harmed by its operation.

Here, by contrast, Ms. Roman challenges a concrete and existing wellness program that is currently being offered as the means to avoid a surcharge that she paid. This is not a hypothetical policy or speculative injury. Ms. Roman was subjected to the surcharge and was offered a noncompliant program as the only way to avoid it. *See* Compl. ¶¶ 10, 30–35, 39–41. Unlike the plaintiffs in *Brown*, she does not seek inclusion in a hypothetical future program. Rather, she challenges an existing wellness program that Defendants actively use to justify a tobacco surcharge she has already paid. That program, as alleged, imposes unlawful structural barriers that make it materially harder for participants to avoid the surcharge and thereby render it noncompliant with ERISA's regulatory framework. Ms. Roman's injury is not conjectural; she was penalized for her health status whether she participated in Defendants' wellness program or not. That is the injury, and it flows directly from Defendants' administration of a program that fails to satisfy the conditions for ERISA's safe harbor. Her claim presents a textbook example of a concrete and traceable injury sufficient for Article III standing. *See Lujan*, 504 U.S. at 560.

### 3. Defendants' Disclosure Failures Are Substantive and Reinforce the Illegality of the Surcharge

Defendants attempt to reframe Plaintiff's disclosure allegations as mere "formatting errors" or "bare procedural violations" akin to the ones in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Def. Br., 9–10. But Ms. Roman does not allege mere technical or cosmetic errors, and she certainly does not claim that Defendants failed to include *identical* information in every plan document. *See id.* She alleges a failure to provide required legal disclosures in ***all*** materials describing the tobacco surcharge. *See* Compl. ¶¶ 35–36.

The rules require that ***all*** plan materials describing a premium differential must explain the availability of a reasonable alternative standard to qualify for the reward *and* contain a statement that recommendations of a participant's physician will be accommodated. *See* 29 C.F.R. § 2590.702(f)(4)(v) and 45 C.F.R. § 146.121(f)(4)(v). The documents Defendants attach to their motion, including various Open Enrollment Guides, Tobacco-Free Program Rewards Resource sheets, and "Get Healthy Here" sheet, do neither. They omit any mention of physician accommodation and therefore obstruct participants' ability to avoid the surcharges. Nor do Defendants claim these are the only documents that describe the surcharge, or that Ms. Roman actually received the required disclosures.[9]

Defendants' failures to include necessary disclosures are not abstract, technical, or "divorced from any concrete harm." Def. Br., 10 (citing *TransUnion*, 594 U.S. at 440). They are tied to a

---

[9] Defendants assert it is "indisputabl[e]" that Ms. Roman received the Plan materials discussing the cessation program at the time she was charged, but they offer no evidence to support that assertion. The mere fact that the Complaint references the SPD does not establish that Ms. Roman, or any participant, was properly notified of their rights under ERISA. Defendants rely solely on a declaration from their outside counsel stating that Open Enrollment Guides are "distributed to participants." *See* Schwartz-Fenwick Decl. ¶ 2. That is not evidence because it provides no detail about how the materials were distributed, whether they reached all participants, or whether Ms. Roman personally received them. Even if she did receive them, as discussed, most lack the required disclosure: that a participant's physician's recommendations will be accommodated, as required by 29 C.F.R. § 2590.702(f)(4)(v). Absent evidence that Plaintiff received a disclosure satisfying all regulatory requirements, this Court should reject Defendants' assertion about Ms. Roman receiving proper notice.

financial injury that Ms. Roman sustained: monetary loss compounded by structural barriers that obstruct participants from asserting their rights and avoiding the surcharge. *See Spokeo*, 578 U.S. at 342 ("the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact"). The regulations do not merely require *some* notice; they require full, clear disclosures in **every** plan material that describes the surcharge. Defendants do not, and cannot, claim that all such materials met this standard. That failure is not just procedural; it's substantive and unlawful.

Finally, Plaintiff's claim is not just about disclosure, it's about whether Defendants were legally permitted to impose a health-based surcharge under ERISA. To invoke the statutory safe harbor, Defendants must prove full compliance with all five regulatory requirements, including the notice rule. Their failure to meet those conditions disqualifies them from that exemption. Whether Plaintiff personally read or relied on the defective disclosures is irrelevant; the deficiencies themselves deter engagement and obstruct access to the surcharge waiver. Viewed in the light most favorable to Ms. Roman, as required at this stage,[10] the Complaint alleges a discriminatory surcharge imposed through a structurally deficient program that was designed in a way that financially benefits Defendants when fewer participants engage.

### C. Defendants Impose Arbitrary Restrictions That Violate the "Full Reward" Requirement

Defendants claim their program complies with ERISA because it gives participants 90 days to complete a cessation program and avoid the surcharge. But this argument confuses offering a

---

[10] *Brown v. Budz*, 398 F.3d 904, 912 (7th Cir. 2005) ("At this early stage of the proceedings, we take plaintiff's factual allegations as true, draw all reasonable inferences in his favor, and will hypothesize any set of facts consistent with those allegations to avoid dismissal").

reasonable alternative with providing the "full reward" required by law. The issue is not whether an alternative exists. If employers impose a discriminatory surcharge, they must provide an alternative standard. The issue is whether that alternative is meaningfully available to participants without unlawful restrictions. The Final Regulations require that individuals who satisfy a reasonable alternative standard receive "the *same, full reward*" as those who meet the initial standard. Final Regulations, 33163. But as alleged, Defendants deny retroactive reimbursement to anyone who completes the program after the arbitrary 90-day window. That turns the reward into a conditional, forward-looking benefit, not the full relief the law demands. ERISA and the Final Regulations do not permit employers to erect arbitrary deadlines that withhold benefits earned by compliance with the standard.

### 1. The "Full Reward" Means the Full-Year Benefit Nonsmokers Receive

Congress's use of the word "full" was intentional. When Congress enacted the Affordable Care Act in 2010 and incorporated the PHSA into ERISA, it required that participants who satisfy a "reasonable alternative standard" receive the "*full* reward," not a reduced or prospective-only benefit. *See* 42 U.S.C. § 300gg–4(j)(3)(v). That language, borrowed from the earlier 2006 version of the Final Regulations—and then repeated in the Final Regulations[11]—reflects a clear mandate: individuals who meet the alternative standard must be treated the same as those who meet the initial standard, including receiving the full-year financial benefit.

The Departments reinforced this view in the Final Regulations, explaining that "while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet

---

[11] Congress and the Departments acted in tandem to preserve the integrity of the *full reward* concept. The Departments deliberately incorporated the exact same phrase—"full reward"—from the statute into the text of the Final Regulations, reinforcing the statutory mandate and ensuring consistent application. See 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv).

the initial standard for that plan year[,]" even if a participant completes the alternative later in the year. Final Regulations, 33163. As one example makes explicit: "if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual." *Id*. Defendants' arbitrary 90-day cutoff flatly contradicts this guidance. Denying retroactive reimbursement to any participant who completes the alternative standard strips them of the very benefit Congress and the agencies said must be preserved.

The DOL confirmed this interpretation of "full reward" in *Secretary of Labor v. Macy's, Inc.*, No. 1:17-cv-541 (S.D. Ohio) arguing that failing to retroactively reimburse surcharges violates ERISA's anti-discrimination protections. The DOL explained:

> "The 'reward' at issue is the ***avoidance of all monthly surcharges in a given Plan year*** because this was the incentive given by Macy's to non-tobacco users. Therefore, in order for the reward to be available to all similarly situated individuals, the ***plain language of the regulations required reimbursement*** of the Tobacco Surcharge ***for the entire Plan year*** to Plan participants who completed a tobacco cessation program."

*Macy's*, Memo in Opposition to Defendant's Motion to Dismiss, ECF 41, PageID 360–61 (emphases added). Macy's argued that it owed only prospective relief because the word "full" did not appear in the pre-2014 regulations. The court rejected that argument, finding that the addition of "full" to the Final Regulations in 2014 simply clarified existing obligations and that under the current regulation, "all seem to agree[,]" even Macy's, that full reward "would require a ***refund of the entire annual amount for anyone who completes the reasonable alternative standard at any point during the year***." *Macy's*, 2021 U.S. Dist. LEXIS 221603, *50–51 (emphasis added).[12]

---

[12] The DOL reaffirmed this position in January 2025, explaining that "the 2013 regulation clarified [that] . . . ERISA section 702(b) compels this interpretation—it prohibits discrimination based on a health status

13

Courts agree that "full reward" means exactly what it says: all surcharges paid during the plan year. Just weeks ago, in *Mehlberg v. Compass Grp. USA, Inc.*, No. 24-cv-04179, 2025 U.S. Dist. LEXIS 84589 (W.D. Mo. Apr. 15, 2025), the court denied a motion to dismiss on nearly identical facts, holding that allegations of a failure to reimburse were sufficient to state a claim. *Id.*, *13. Similarly, in *Lipari-Williams v. Mo. Gaming Co.*, 339 F.R.D. 515, 522 (W.D. Mo. 2021), the court confirmed that "[t]he '*full reward' requires retroactively reimbursing a participant* that completes the alternative standard." (Emphasis added.) These rulings reinforce what the statute, regulations, and DOL guidance already mandate: plans must treat participants who complete the alternative standard as if they satisfied the initial standard, including full reimbursement for any surcharges paid during a given plan year.

### 2. Defendants' Reliance on the 2014 FAQ is Misplaced

Defendants' only support for their strained and self-serving interpretation that ERISA does not require reimbursement for all participants who satisfy an alternative standard is a single non-binding Q&A from a 2014 DOL FAQ. *See* Def. Br. 13. But the FAQ does not even address the "full reward" requirement and offers no guidance on whether surcharges must be reimbursed. It simply confirms that employers are not required to offer a *second opportunity* to qualify for the alternative standard, not that they can deny the full reward to those who *do* qualify.[13] The Final Regulations resolve that issue by mandating that the full reward under the outcome-based wellness

---

factor, and Macy's argument would in fact allow for plans to discriminate for a portion of the plan year." *Macy's*, Memo in Opp. to Defs.' Motion for Reconsideration, ECF 87, PageID: 1224 (Jan. 24, 2025).

[13] Defendants improperly conflate two distinct regulatory requirements: the frequency of opportunity and the full reward requirements. The former governs how often a participant must be given a chance to qualify for the reward; the latter ensures that anyone who *does* qualify, regardless of when, receives the *entire* benefit. These provisions work in tandem, not in tension: offering an opportunity to qualify means nothing if the full reward is denied based on arbitrary timing restrictions. The law does not allow plans to comply with one requirement by violating the other.

14

program be available to all similarly situated individuals. 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. 146.121(f)(4)(iv).

On its face, the FAQ undercuts Defendants' position. Once an employer *chooses* to offer an opportunity to qualify, it must comply with all the accompanying requirements, including the obligation to provide the full reward.[14] Defendants cannot selectively comply with one part of the regulation while ignoring another.

Even if the 2014 FAQ could be stretched to address the "full reward" requirement (it cannot), it carries no legal force. It is not a substantive regulation with the force of law,[15] lacks statutory grounding, and offers no explanation for how denying retroactive reimbursement can be reconciled with the governing regulations or the Departments' own interpretive guidance.[16] As discussed, the DOL's position in *Macy's* directly contradicts any claim that retroactive relief can be denied, making clear that failure to reimburse surcharges after successful completion of a cessation program violates ERISA. The only interpretation that aligns the FAQ with the law is Plaintiff's: while employers are not required to offer continuous opportunities throughout the year, if they do

---

[14] *See Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir. 2007) ("Employers are not required to provide [] benefits, but when they do, their plans must comply with ERISA, and the promises they make can in no way be considered mere gratuities. ***The Plan cannot avoid that which is dictated by the terms of ERISA***") (emphasis added).

[15] *See Macy's*, No. 1:17-cv-541, Supplemental Brief on *Loper Bright*, ECF 77, PageID 912 ("The Secretary's [Final R]egulations implementing ERISA section 702(b) are legislative rules promulgated pursuant to statutorily delegated authority and notice-and-comment procedures, and thus ***have the force and effect of law***. 29 U.S.C. § 1135." (emphasis added)).

[16] *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference"); *Chi. Lawyers' Comm. for Civil Rights Under the Law, Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 692 n.9 (N.D. Ill. 2006) (rejecting an informal administrative opinion as "not binding" finding the "supplemental authority [a memo from HUD's Deputy Assistant Secretary] unpersuasive" because it "[wa]s not an agency regulation, but rather is merely a non-binding agency opinion that carries no 'conclusive mystique.'" (citing *Sehie v. City of Aurora*, 432 F.3d 749, 753 (7th Cir. 2005)).

offer a chance to qualify mid-year, they must grant the full reward to those who succeed. Defendants failed that test, rendering their program noncompliant.

### D.  Ms. Roman Has Alleged Breaches of Fiduciary Duties

Defendants try to recast their actions as non-fiduciary "settlor" functions (Def. Br., 15), but Ms. Roman's claims go to the heart of ERISA's protections. She alleges that Defendants unlawfully collected tobacco surcharges and then used those participant-paid funds to reduce their own contributions to the Plan, not to defray the cost of coverage for all participants. *See* Compl. ¶¶ 70–75. That is classic self-dealing and a direct breach of ERISA's duty of loyalty.[17] Ms. Roman also alleges that Defendants failed to monitor the terms of the wellness program for legal compliance and failed to ensure participants received accurate, complete disclosures. *See* Compl. ¶¶ 49, 58–59. These are not settlor functions;[18] they are core fiduciary duties.[19] Regular monitoring

---

[17] *See Svigos v. Wheaton Sec., Inc.*, No. 17-cv-04777, 2018 U.S. Dist. LEXIS 13992, at *21–22 (N.D. Ill. Jan. 29, 2018)("Defendants acted as plan fiduciaries when they allegedly engaged in self-dealing transactions. Such self-dealing violates the ERISA fiduciary duty . . . and Plaintiff thus states a claim for breach of that duty"); *Godfrey v. GreatBanc Tr. Co.*, No. 18-cv-7918, 2020 U.S. Dist. LEXIS 150336, at *24 (N.D. Ill. Aug. 19, 2020) ("a plan fiduciary should 'avoid placing himself in a position where his acts as officer or director of the corporation will prevent his functioning with complete loyalty' to Plan participants and beneficiaries." (cleaned up)); *see also Leigh v. Engle*, 727 F.2d 113, 122 (7th Cir. 1984) (discussing how misuse of plan assets implicates fiduciary responsibilities); *Howell v. Motorola, Inc.*, 633 F.3d 552, 566 (7th Cir. 2011) ("Self-dealing, conflicts of interest, or even divided loyalties are inconsistent with fiduciary responsibilities").

[18] Defendants reliance on *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) and *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), is misplaced. Those cases stand for the unremarkable proposition that plan design is a settlor function, but they do not insulate fiduciaries from liability once they begin administering a plan in a way that violates ERISA. Here, Defendants did not simply design a wellness program; they actively administered it by exercising discretion over when and whether participants received reimbursement and by drafting participant communications that omitted required disclosures. Courts have held that entities exercising discretion in implementing plan terms, determining eligibility, or controlling plan assets are acting as fiduciaries subject to ERISA. *See Rud v. Liberty Life Assurance Co.*, 438 F.3d 772, 774 (7th Cir. 2006); *Neuma, Inc. v. E.I. DuPont De Nemours & Co.*, 9 F. Supp. 2d 952, 954 (N.D. Ill. 1998). That is precisely what Ms. Roman alleges here.

[19] *Burke v. Boeing Co.*, 42 F.4th 716, 730-31 (7th Cir. 2022) ("Appointing fiduciaries, like the [] Committee[s], have an ongoing fiduciary duty to monitor the activities of their appointees. 'The duty exists so that a plan administrator or sponsor cannot escape liability by passing the buck to another person and then turning a blind eye'") (internal citations omitted); *Placht v. Argent Tr. Co.*, No. 21-cv-5783, 2022 U.S. Dist. LEXIS 142993, at *26 (N.D. Ill. Aug. 10, 2022) ("The Department of Labor has explained that the duty [to monitor] requires reviewing 'the performance of trustees and other fiduciaries' at 'reasonable

of program terms for legal compliance[20] and communicating clearly with participants are core duties under ERISA,[21] and Defendants' failure to carry out those duties, coupled with their use of unlawfully collected surcharges to reduce the company's own financial obligations, constitutes a breach of the fiduciary obligations ERISA imposes.

Ms. Roman also alleges a prohibited transaction under ERISA.[22] Defendants argue the surcharge arrangement reflects the "normal functioning" of a self-insured plan, not an unlawful transaction. Def. Br., 16–17. But Ms. Roman challenges the fiduciary misuse of participant-paid surcharges, which constitute plan assets under 29 C.F.R. § 2510.3-102(a)(1). Defendants diverted those assets to the company's general accounts to offset Walgreens' own Plan funding obligations. Compl., ¶¶ 46–47. That was not a neutral funding mechanism; it was an ongoing reallocation of Plan assets for the employer's benefit. By retaining the surcharges, accruing interest on them, and using them to satisfy Walgreen's own financial responsibilities—rather than returning those funds to participants—Defendants engaged in a prohibited transaction under ERISA § 406. That conduct is not "fundamental" to plan administration; it is a textbook violation of fiduciary duty.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

---

intervals' and 'in such [a] manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and the statutory standards, and satisfied the needs of the plan'") (citations omitted).

[20] *Godfrey*, 2020 U.S. Dist. LEXIS 150336, *30-33 (N.D. Ill. Aug. 19, 2020) (acknowledging the duty of prudence "includes a continuing duty to monitor" and that "plaintiffs allege, GreatBanc failed to comply with its obligations to monitor . . . and notify participants . . . [that] were material facts affecting the Plan's interests . . . and [] substantially diminished the value of the Plan's assets. These allegations of inaction by GreatBanc support a plausible claim for breach of GreatBanc's duty of prudence under section 404(a)").

[21] *See, e.g., Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 640 (7th Cir. 2004) ("[A] breach of fiduciary duty exists if fiduciaries 'mislead plan participants or misrepresent the terms or administration of a plan'").

[22] Under well-established law, "[t]he elements of a party-in-interest, prohibited transaction claim are: (1) the fiduciary causes (2) a listed transaction to occur (3) between the plan and a party in interest." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 335 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020).

Dated: May 13, 2025

Respectfully submitted,

By: */s/ Oren Faircloth*_____
Oren Faircloth
Kimberly Dodson
Mason Barney
SIRI & GLIMSTAD LLP
745 Fifth Ave.
Suite 500
New York, NY 10151
Telephone (212) 532-1091
ofaircloth@sirillp.com
kdodson@sirillp.com
kmclean@sirillp.com

Scott Haskins
SIRI & GLIMSTAD, LLP
220 West Congress Street
2nd Floor
Detroit, MI 48226
shaskins@sirillp.com

*Attorneys for Plaintiff*

18