**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ALEXIS J. ROMAN, on behalf of herself and all others similarly situated, | Case No. 1:25-cv-1504 |
| Plaintiff, | Judge Steven C. Seeger |
| v. | Magistrate Judge M. David Weisman |
| WALGREEN COMPANY and the WALGREEN HEALTH AND WELFARE COMMITTEE, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

318084189v.11

**INTRODUCTION**

The Walgreen Health & Welfare Plan (the "Plan") offers a wellness program and component tobacco cessation program that are fully compliant with applicable legal requirements, and Plaintiff's Complaint allegations do nothing to refute this. In particular, this program: (1) reduces existing health insurance premiums for those tobacco-using participants who participate in the tobacco cessation program, (2) is adequately disclosed and described in its Summary Plan Description ("SPD"), and (3) retroactively reimburses participants the "full reward" for those who participate in the tobacco cessation program before the "Program Completion Deadline" (*i.e.*, depending on the Plan year, either 90 or 180 days from the start of coverage).

These are material, and important differentiators from the three tobacco surcharge opinions (*Lipari-Williams*, *Mehlberg* and *Bokma*[1]) on which Plaintiff relies to support her position that she has Article III standing solely by virtue of being a tobacco-using Plan participant who failed to take available steps to reduce her premium. Indeed, Plaintiff does not plausibly plead that the program is unlawful, and she acknowledges that she was aware of the tobacco cessation program and chose not to participate. Plaintiff thus has no injury in fact to support Article III standing.

Plaintiff does her best to muddy the waters by arguing that the Plan's tobacco cessation program is the same as the programs in *Lipari-Williams*, *Mehlberg* and *Bokma*. She alleges that as with those programs, the Plan's program "denied participants the 'full reward' required by law, imposed arbitrary time limits on the availability of the reasonable alternative standard, and

---

[1] *Lipari-Williams* v. *Missouri Gaming Co., LLC*, 339 F.R.D. 515 (W.D. Mo. 2021); *Mehlberg v. Compass Group USA, Inc.*, No. 24-CV-04179-SRB, 2025 WL 1260700 (W.D. Mo. Apr. 15, 2025); *Bokma v. Performance Food Group, Inc.*, No. 3:24CV686 (DJN), 2025 WL 1452042 (E.D. Va. May 20, 2025).

failed to provide adequate notice of how to avoid the surcharge." (Opp. at 1.) But the Court is not bound by Plaintiff's incorrect account where, as here, the Court need not take Plaintiff's legal conclusions as true, *Bokma*, 2025 WL 1452042, at *5 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) and should reject Plaintiff's factual allegations when an exhibit "incontrovertibly contradicts" them. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2007).

In short, while Plaintiff does her best to turn the Walgreens program into one identical to the one at issue in the other cases, she is simply incorrect. In reality, Plaintiff has not plausibly alleged that the tobacco cessation program is in any way unlawful, and her Count I should be dismissed. In turn, without a noncompliant program, she cannot argue that the premiums she paid by her own failure to participate in the tobacco cessation program constitute an injury in fact sufficient to establish Article III standing.

Irrespective of the assessment of whether the Plan's tobacco cessation program may be plausibly unlawful, Supreme Court precedent demands a deeper analysis of standing than simply determining whether someone has been charged a monetary fee. Under the program at issue in this case, Plaintiff simply cannot trace the harm of which she complains—paying the default premium for tobacco users—to the purported flaws in the program. Plaintiff had available to her a compliant and full disclosure, yet she failed to even inquire or initiate participation in the tobacco-cessation program. And she obviously did not participate in the program beyond the Program Completion Deadline. Plaintiff was never eligible for the "full reward." Accordingly, Plaintiff's entire Complaint should be dismissed with prejudice for lack of Article III standing.

Moreover, even if Plaintiff is assumed to have standing, Plaintiff's Count I claim that the tobacco cessation program violated ERISA § 1182(b)(2)(B) also fails on the merits, for the same reasons described above, *i.e.*, she does not plausibly allege that the applicable wellness program

under the Plan is unlawful. As for Plaintiff's Count II, alleging a claim for breach of fiduciary duty, it remains fundamentally a challenge to the *design* of the Plan (*i.e.*, having a deadline for completion of the program, and collecting premiums as a cafeteria plan), not to any flaws or deception in the implementation of those Plan terms (of which there are none). The allegations faulting the Plan design simply cannot form the basis for any breach of fiduciary claim. Lastly, it remains true that the collection of participant premiums—a ministerial function—is not a transaction prohibited by ERISA and was fully disclosed in the SPD. Accordingly, Count II also fails and should be dismissed.

The Court should grant Defendants' motion to dismiss Plaintiff's Complaint.

## ARGUMENT

## I. PLAINTIFF LACKS ARTICLE III STANDING.

### A. Plaintiff Has Not Plausibly Alleged That The Plan's Tobacco Cessation Program Violates ERISA.

Key to each finding of an Article III injury in the other "tobacco surcharge" opinions that have been issued is that each of those courts concluded that the plaintiff had *plausibly* alleged an *unlawful* wellness program. The wellness programs in those cases charged a fee to tobacco users, failed to comply with ERISA regulations requiring disclosure of an alternative reasonable standard to the program, and represented unlawfully that participants who completed the program would not be eligible for retroactive relief. Each of these findings were the conditions precedent that led to the courts concluding the plaintiffs had experienced an injury in fact.

These findings are not applicable here. First, ERISA § 1182(b)(2)(B) expressly allows plans to implement premium discounts or rebates. *See* ERISA § 1182(b)(2)(B). As explained in more detail in Part I(A)(1) *infra*, the program at issue here offered discounts to participants for their participation in various wellness programs, one of which was the tobacco cessation

3

program. Second, the SPD accurately and completely describes the program, as Plaintiff concedes. Plaintiff misstates the disclosure regulations in an effort to paint other disclosures as insufficient as a matter of law. In fact, as discussed in Part I(A)(2) *infra*, the regulation expressly states that the notice regarding an available reasonable alternative standard must be contained in plan materials that describe the terms of the program. However, this disclosure is *not* required when the plan materials simply mention that the program is available. 29 C.F.R. § 2590.702 (f)(4)(v). Finally, the Plan here makes clear that participants who complete the program within the Program Completion Deadline qualify for retroactive relief, in direct contrast to the programs at issue in *Lipari-Williams*, *Mehlberg* and *Bokma*. "Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient, rather, plaintiffs must include allegations that 'nudg[e] their claims across the line from conceivable to plausible.'" *Gress v. Commonwealth Edison Co.*, 559 F. Supp. 3d 755, 763 (N.D. Ill. 2021). Plaintiff fails to meet this burden to establish standing or a violation of 29 U.S.C. § 1182.

1.     <u>The Plan Provides That a Participant Is Eligible to Obtain Reductions in Her Premium For Participating in Certain Wellness Programs.</u>

Plaintiff frames her failure to apply for available discounts to her premiums as instead an additional charge that she incurred through no fault of her own. She does this because the case law upon which she relies to establish standing refers to situations in which an unlawful fee has been levied on the plaintiff. (Opp. at n. 8, stating that "[n]umerous courts have found that plaintiffs who pay money under an unlawful scheme . . . suffer a concrete economic injury….") Here, Plaintiff—and all other participants in the Plan—start at the same default level of health insurance premiums. To qualify for reductions and rewards, a tobacco-using participant must participate in a tobacco cessation program before the Program Completion Deadline (or qualify for an exception to such participation). In sum, Plaintiff's payment of non-reduced premiums is

traceable to her tobacco use and her own failure to participate in the wellness program, and not to a noncompliant program.

### 2. Plaintiff Admits That The SPD Is A Compliant Disclosure.

Despite admitting that the Plan's Summary Plan Description is fully compliant, Plaintiff argues in her opposition that other, unidentified disclosures regarding the Plan's tobacco cessation program do not comply with the applicable regulations. (Opp. at n. 6.) However, in making this argument, Plaintiff blatantly omits a section of the regulation that makes it plain her assertions are incorrect. Specifically, in its entirety, the regulation provides:

> **(v) Notice of availability of reasonable alternative standard.** The plan or issuer must disclose in all plan materials describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated. ***If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required.*** Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

29 C.F.R. § 2590.702 (f)(4)(v) (emphasis added). And, contrary to Plaintiff's contention in her opposition, the 2022 and 2023 Open Enrollment Guides in fact discuss the premium surcharge and the 90-day deadline. (ECF No. 24-7 at 13; ECF No. 24-8 at 12.) The remainder of the documents fall into documents that "merely mention the program is available" and thus do not require the disclosures. (*See* ECF No. 24-7 at 4, 25; ECF No. 24-8 at 4, 27, 28; ECF No. 24-9 at 5, 6, 37, 39; ECF No. 24-10 at 5; ECF No. 24-11 at 2; ECF No. 24-12 at 2; ECF 24-13 at 2.) Defendants' disclosures comply with the regulation. Plaintiff thus has not and cannot show a violation of the regulation or rest her injury on any non-compliant disclosure.

### 3. A Completion Deadline Does Not Deny Participants The "Full Reward."

Plaintiff argues that imposing a deadline to complete the tobacco cessation program

denies plan participants the "full reward" of retroactive refunds. However, if Plaintiff's reading is correct, then there would be no need for a provision in the same regulations mandating a certain "frequency of opportunity" to participate in the very same program. ERISA regulations require that Defendants provide at least one opportunity for participants to qualify for the full reward. 29 C.F.R. § 2590.702(f)(4)(i). Plaintiff urges that all participants must be allowed to complete the program at their leisure during the plan year to qualify for the "full reward." But if the Plan cannot restrict when participation must occur it cannot also *limit the frequency of the opportunity*. 29 C.F.R. § 2590.702(f)(4)(i) (emphasis added). In short, Plaintiff's interpretation of the regulation renders the "frequency of opportunity" requirements in the regulation superfluous.

Plaintiff also offers no controlling authority for her interpretation of "full reward." Nor can she. The very regulations Plaintiff contends Defendants violated explicitly allow for participation at a specific time and place. *See* 29 C.F.R. § 2590.702(f)(4)(v) (Example 6 of the regulations approves of a tobacco cessation program that "requires participation at a time and place that are not unreasonably burdensome or impracticable for participants"). Here, Defendants provide more than is required, and participants can complete the program at their convenience.

The questionable nature of Plaintiff's interpretation of "full reward" is underscored by the questionable nature of the sources Plaintiff must rely on to maintain her position. For example, Plaintiff relies heavily on selected language in a 2018 brief submitted by the former Secretary of Labor in an enforcement action arguing that each similarly-situated participant should be entitled to the full reward, *i.e.*, "avoiding the tobacco surcharge for the entire year." *Secy' of Lab. v. Macy's, Inc.,* No. 1:17-cv-541 (S.D. Ohio Oct. 31, 2018), ECF No. 41 (Opp. at 13-14.) Plaintiff would have us read this language to denote everyone is entitled to avoid the tobacco surcharge, but skips over the passage's reference to "similarly-situated" individuals. In the Plan's tobacco

6

cessation program, similarly-situated individuals are each entitled to the "full reward." Even if this writing was construed as Plaintiff desires, the Secretary's position has not been codified in any regulation or guidance, and is of no value to the Court's analysis here.

Plaintiff also disingenuously claims that DOL's 2014 FAQ provides only that participants must be given at least one opportunity to enroll. (*See* Opp. at 14-16.) However, the FAQ actually explains that if a participant enrolls in the tobacco cessation program in the middle of the year, the plan may allow "rewards (including pro-rated rewards) for mid-year enrollment." DOL FAQs at 6 (Q8). If "full reward" meant retroactive reimbursement of all tobacco surcharge payments for participants who participate in the program at any point in the year, the DOL would not permit pro-rated rewards. Plaintiff's reading of this guidance is simply incorrect.

Finally, in relying on *Macy's, Melhberg, Bokma*, and *Lipari-Williams*, Plaintiff fails to acknowledge that those decisions did not analyze whether a deadline to complete the reasonable alternative standard was lawful, and the courts certainly did not conclude that such a deadline denies the participant the "full-reward." *See generally Secretary of Labor v. Macy's, Inc.,* No. 1:17-cv-541, 2021 WL 5359769, (S.D. Ohio Nov. 17, 2021); *Lipari-Williams,* 339 F.R.D. 515; *Mehlberg,* 2025 WL 1260700; *Bokma,* 2025 WL 1452042. In short, Plaintiff has no support for the nonsensical claim that the regulations preclude any deadline for completion. Thus, she is not injured by the deadline, and she cannot use it to establish a violation of ERISA 29 U.S.C. § 1182.

        4.      <u>Plaintiff Overstates The Supreme Court's Holding in *Cunningham.* In Any Event, She Placed the Exemption At Issue.</u>

Plaintiff argues that the Supreme Court's recent decision in *Cunningham v. Cornell University*, 145 S. Ct. 1020 (2025), relieves her of the burden of sufficiently pleading "non-compliance" or from satisfying traceability. In *Cunningham*, the Court held that a plaintiff need not plead the inapplicability of the exceptions stated in § 1108(b)(2)(A) when bringing a

prohibited transaction claim under 29 U.S.C. § 1106. *Id.* at 1032. Contrary to Plaintiff's assertion that the burden may be shifted to Defendants on any "affirmative defense or exemption" the Court did not broadly analyze the pleading requirements for other ERISA claims. (Opp. at 8.) It also did not hold that a plaintiff is relieved of pleading the inapplicability of a safe harbor found in a federal regulation, and not the statutory text of ERISA. Finally, unlike in *Cunningham*, Plaintiff herself put the exemption at issue by pleading its elements in her Complaint and arguing that it was not satisfied. (*See, e.g.*, Cmplt. ¶¶ 6, 24, 33-45.)

**B.      Plaintiff's "Health Based Surcharge" Was Not Caused By The Parameters of the Tobacco Cessation Program or Any Plan Disclosure.**

Irrespective of the compliance assessment regarding the Plan's tobacco cessation program,  Plaintiff cannot establish Article III standing because the harm of which she complains—paying a "health based surcharge"—is *still* not traceable to the completion deadline or any Plan disclosure. The Supreme Court and the Seventh Circuit have made clear that the question of Article III standing requires close scrutiny. Relevant here, Article III standing requires that the "injury . . . is traceable to the wrongdoing alleged in *that* particular claim." *Johnson v. U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015) (noting that "[t]he fact that a plaintiff has suffered an injury that is traceable to one kind of conduct does not grant the plaintiff standing to challenge other, even related, conduct; 'standing is not dispensed in gross.'") (emphasis added). As the Supreme Court noted in *Thole v. U. S. Bank N.A*, 590 U.S. 538, 547 (2020), there is no Article III standing where "[w]inning or losing this suit would not change" the premium that Plaintiff pays.

Plaintiff alleges that the tobacco cessation program is deficient on three grounds: (1) that participants have been denied the "full reward," of the benefit of participating in the tobacco cessation program, (2) that Defendants "imposed arbitrary time limits on the availability of the

8

reasonable alternative standard," and (3) that Defendants "failed to provide adequate notice of how to avoid the surcharge." (Opp. at 1.) But Plaintiff did not incur the surcharge because of any of these alleged deficiencies. Rather, she incurred the tobacco surcharge because of her affirmative decisions to use tobacco products and to decline to engage with the tobacco cessation program. Therefore, under Plaintiff's own theory, Plaintiff lacks standing because her injury "would continue to exist even if" the program "were cured of all of its alleged infirmities." *Johnson,* 783 F.3d at 662 (affirming dismissal on standing grounds).

The cases Plaintiff cites for the proposition that she can establish an injury in fact without attempting to participate in the program are readily distinguishable because they all involved an injury traceable directly to *plausibly unlawful* conduct. In *DaVita, Inc. v. Marietta Mem'l Hosp. Employee Health Benefit Plan* 978 F.3d 326, 341 n.8 (6th Cir. 2020), *rev'd on other grounds*, 596 U.S. 880 (2022) (Opp. at n.8.), the court found an injury in fact because the plaintiff had been assigned in full a plan participant's right to a claim for benefits that had been denied by his plan. Similarly, in *Dubuisson v. Stonebridge Life Insurance Company*, 887. F. 3d 567, 574-75 (2d Cir. 2018) (Opp. at n. 8)*,* the court found an injury in fact where the plaintiff paid the defendant premiums for indisputably illegal policies. Plaintiff's reliance on *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085-88 (11th Cir. 2019) (Opp. at n. 8), is also misplaced because there the court found standing where the plaintiff purchased an illegal product that could only have been distributed by the defendant. Finally, *McKeage v. Bass Pro Outdoor, LLC*, 943 F.3d 1148, 1150 (8th Cir. 2019) (Opp. at n. 8.), does not apply because the plaintiffs directly paid the defendants for services performed through the unauthorized practice of law.

The "tobacco surcharge" cases Plaintiff cites are also readily distinguishable in that, unlike here, each involved the court concluding that the plaintiff's allegations that the wellness program

9

was unlawful rose to the level of *plausibility* as defined by *Iqbal* and *Twombly*. Moreover, each hinged on the traceability of the alleged injury to a "*legally deficient* notice" which "confers standing when coupled with an actual monetary loss." *Mehlberg*, 2025 WL 1260700, at \*4.

For example, in *Lipari-Williams*, 339 F.R.D. at 522, the tobacco affidavit required to be completed each year "informed participants of a binary option: (1) non-tobacco users avoid the surcharge; or (2) tobacco users are subject to the surcharge." The affidavit did *not* inform participants of the availability of a reasonable alternative standard under which tobacco users could avoid being charged the additional tobacco surcharge. *Id.* Because no tobacco users were informed of an alternative to tobacco use, the court concluded that the disclosure was *per se* unlawful, and the resulting charge was unlawful because each tobacco user "pa[id] a fee they should not have been charged." *Id.* at 524. Accordingly, the *Lipari-Williams* court found that the plaintiff had demonstrated an injury sufficient to establish Article III standing. *Id.*

In *Mehlberg*, 2025 WL 1260700, at \*3-4, the court again found that the plaintiff had plausibly alleged that each participant had been charged an additional fee *and* that the plan materials describing the terms of the wellness program failed to include notice of the reasonable alternative standard that would have prevented the fee from being charged, as well as declared that no retroactive reimbursement of the tobacco surcharge would be provided. Accordingly, the *Mehlberg* court found standing where the participants had been charged a fee that they could have avoided had the program adequately disclosed the reasonable alternative standard. *Id*. at \*4.

In *Bokma*, 2025 WL 1452042, at \*3, the court noted that neither the plan document nor the summary plan description referenced the tobacco cessation program, constituting a legally deficient disclosure. The Court also took as true that the program failed to provide "retroactive reimbursement to obtain the 'full reward' given to similarly-situated individuals." *Id.* This all led

10

the Court to conclude that, "absent Defendant's alleged administration of its non-compliant wellness program, Plaintiffs would not have had to pay an unlawful surcharge." *Id.* at *7. Here, the opposite is true: the Plan's program is compliant, and the premium charged to Plaintiff was therefore lawful and insufficient to establish standing. None of the above cases establish that Plaintiff has standing because Plaintiff has not plausibly pleaded a non-compliant program.

### C. Plaintiff Cannot Trace Her Purported Injury to Any Disclosure.

Plaintiff argues that she has standing to pursue her claims because of Defendants' purportedly deficient disclosures. This fails because she does not allege that she failed to participate *because of* a deficient disclosure. Standing is required for each claim Plaintiff asserts, and this claim constitutes one for an "informational injury." *See Robertson v. Allied Solutions, LLC*, 902 F. 3d 690, 694 (7th Cir. 2018). To have standing on an informational injury, she must allege (1) adverse effects that (2) result from the denial of information. *See Bryant v. Walgreen Co.*, No. 23 CV 1294, 2023 WL 5580415, at *2 (N.D. Ill. Aug. 29, 2023) ("Informational injury that causes no adverse effects does not satisfy Article III."). In other words, "[t]here must be 'downstream consequences from failing to receive the required information.'" *Id.*

As a starting point, Defendants' disclosures are not deficient. *See* Part I(A)(2) *supra*. Even if they were, Plaintiff deliberately declined to engage in the program. (Opp. at 6.) This admission establishes that Plaintiff suffered no downstream effects, because she was fully aware of the tobacco cessation program and chose not to participate. Thus, she lacks Article III standing to assert this claim. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 280 (7th Cir. 2020) ("The nonreceipt of information ... may amount to a concrete injury… if it impairs the plaintiff's 'ability to use [that information] for a substantive purpose that the statute envisioned.'").

## II. PLAINTIFF'S COUNT I CLAIM FAILS ON THE MERITS.

For the same reasons outlined in Part I *supra*, Plaintiff's Count I asserting a violation of

11

ERISA's 29 U.S.C. § 1182(b) antidiscrimination provision fails on the merits. Plaintiff simply does not plead a plausible claim that the program violates ERISA.[2]

## III. PLAINTIFF'S FIDUCIARY CLAIM IS IN ACTUALITY A CHALLENGE TO THE SETTLOR FUNCTION OF PLAN DESIGN.

### A. Plaintiff Cannot Rely On The Pure Implementation of Plan Design Terms To Establish Her Breach of Fiduciary Duty Claim.

Plaintiff's opposition does not save her claims for breaches of fiduciary duty, because her opposition again demonstrates that she is challenging a settlor decision—the design of the Plan. Plaintiff's recharacterization of her claims as challenging the unlawful collection of premiums, and a failure to monitor for legal compliance cannot change the fact that she challenges the framework of the Plan. *Bator v. Dist. Council 4*, 972 F.3d 924, 931 (7th Cir. 2020) ("Decisions about the 'payout detail of the plan' or 'the content of the plan are not themselves fiduciary acts'… nor are decisions regarding 'the form and structure of the Plan.'").

Indeed, in *Macy's*, 2021 WL 5359769, at *18, the court dismissed the Secretary's fiduciary duty claims, reasoning that Macy's was merely implementing the very same wellness program terms that were established in creating the program. As the court explained, those actions were "not enough to make Macy's a fiduciary rather than a settlor," as the distinction between "creation (a settlor function) and implementation (a fiduciary function) is illusory where the Secretary alleges only that a discriminatory wellness program was implemented as created." *Id.* Here, Plaintiff's challenge to the implementation of the Plan is a disguised challenge to the Plan design. Accordingly, it cannot form the basis for a breach of fiduciary duty claim.

---

[2] A further issue with this claim is that Plaintiff has failed to identify a breach of fiduciary duty that must accompany this claim in order for her to have statutory standing to bring suit pursuant to ERISA 29 U.S.C. § 1132(a)(3). *See, e.g., Kenseth v. Dean Health Plan, Inc.,* 722 F.3d 869, 882 (7th Cir. 2013) (holding the plaintiff "may seek make-whole money damages as an equitable remedy under section 1132(a)(3) if she can in fact demonstrate that [the defendant] breached its fiduciary duty to her and that the breach caused her damages").

12

Plaintiff also attempts to recast her claims as ones for failing to monitor the performance of other fiduciaries, by alleging that Defendants "exercise[ed] discretion over when and whether participants received reimbursement by drafting participant communications that omitted required disclosures." (Opp. at n. 18.) However, "[a] failure to monitor claim is derivative in nature and must be premised on an underlying breach of fiduciary duty." *See Dale v. NFP Corp.*, 658 F.Supp.3d 620, 636–37 (N.D. Ill. 2023).[3] Here, Plaintiff admits that Defendants' SPD is compliant, and there no allegations or evidence that the tobacco cessation program was administered inconsistent with the Plan terms. Without an underlying fiduciary breach, Plaintiff cannot succeed by recharacterizing her claims as a failure to monitor. And, she cannot amend her complaint through motion to dismiss briefing. *See Martinez v. Sgt. Hain*, 16-CV-2237, 2016 WL 7212501, at *7 (N.D. Ill. Dec. 13, 2016). Plaintiff points to *Vallone v. CNA Financial Corp*, 375 F.3d 623, 640-41 (7th Cir. 2004), for the proposition that "a breach of fiduciary duty exists if fiduciaries 'mislead plan participants or misrepresent the terms or administration of the plan.'" However, in *Vallone*, the court went on to hold that "the employer must have set out to disadvantage or deceive its employees … in order for a breach of fiduciary duty to be made out" and affirmed summary judgment because, like here, there was no such evidence. *Id*. at 642.[4]

---

[3] Plaintiff's reliance on *Burke v. Boeing Co.*, 42 F. 4th 716 (7th Cir. 2022) and *Placht v. Argent Trust Co.*, 2022 WL 3226809 (N.D. Ill. Aug. 10, 2022) are unavailing. In *Boeing*, the court acknowledged a duty to monitor appointed fiduciaries but dismissed the claim in part because there was no allegation of an underlying fiduciary breach. 42 F. 4th at 731. The court in *Placht* permitted a "failure to monitor" claim to proceed because there was a viable underlying breach alleged related to a specific stock-purchase transaction. 2022 WL 3226809 *9.

[4] Plaintiff's reliance on *Rud v. Liberty Life Assurance Co. of Boston*, 438 F.3d 772, 774 (7th Cir. 2006) and *Neuma, Inc. v. E.I. Dupont De Nemours & Co.*, 9 F. Supp. 2d 952, 954 (N.D. Ill. 1998*)* is also misplaced, because neither involved the administration of a wellness program consistent with Plan terms. In *Rud*, Liberty Life was deemed a fiduciary because it had discretionary authority over an ERISA plan's assets and exercised discretionary authority to award long term disability benefits. 438 F.3d at 774. Similarly, *Neuma* involved a dispute over a life insurance policy and the court made the uncontroverted statement that an employer who administers an ERISA plan *could* be a fiduciary. 9 F. Supp. 2d at 953-54. Plaintiff's "assertion alone [of fiduciary status] is insufficient" to state a claim. *Id.* at 54.

### B.        Plaintiff Misconstrues the Structure of the Plan.

Plaintiff's assertion of fiduciary breach through self-dealing fails because it is based upon a fundamental misunderstanding of the Plan's structure. The Plan is a primarily self-insured "cafeteria" health and welfare benefit plan, which is exempt from the trust requirement, *i.e.* it is permitted to deposit collected premiums with company assets that are used to pay benefits. *See Phelps v. CT Enters.*, 194 F. App'x 120, 125 (4th Cir. 2006) (indicating that the "cafeteria plan avoided the trust requirement".)[5] DOL guidance also designates the "[c]ollection of contributions ... as provided in the plan" as a ministerial, not fiduciary, function because there is no exercise of discretion. 29 C.F.R. § 2509.75-8 (Question D-2) ("a person who performs purely ministerial functions such as [collecting contributions] is not a fiduciary").

Again, Plaintiff's self-dealing allegations attack settlor decisions regarding the structure of the Plan. What she alleges as self-dealing is simply a funding mechanism for the Plan. Because she lacks any allegations that the Plan was administered inconsistent with this structure, her challenge again is to the Plan design, and does not state a claim for a fiduciary breach.[6]

---

[5] *See* U.S. Dep't of Labor Tech Release 92-01, *DOL Enforcement Policy for Welfare Plans with Participant Contributions* (May 28, 1992) (available at https://dol.gov/agencies/ebsa/employers-and-advisers/guidance/technical releases/92-01). DOL Technical Release 92-01 "announced an exception to the trust requirement for 'cafeteria plans' under 26 U.S.C. § 125."

[6] The cases cited by Plaintiff do not contradict this conclusion because none found self-dealing in connection with the collection of premiums as part of a cafeteria plan. In *Svigos v. Wheaton Sec., Inc.*, 17-CV-04777, 2018 WL 587190, at *7-*9 (N.D. Ill. Jan. 29, 2018), the allegations of self-dealing were that the fiduciaries caused plan assets to be diverted to a fiduciary as sham fees. Similarly, *Godfrey v. GreatBanc Tr. Co.*, 18 C 7918, 2020 WL 4815906, at *8-*9 (N.D. Ill. Aug. 19, 2020), involved an employee stock ownership plan and distributions of plan stock by fiduciaries to themselves to the detriment of plan participants. *Leigh v. Engle*, 727 F.2d 113, 124 (7th Cir. 1984) involved allegations of self-dealing where the fiduciaries affirmatively used plan assets to invest in corporate control contests in which the fiduciaries had a substantial interest. Finally, *Howell v. Motorola, Inc.* 633 F.3d 552, 568 (7th Cir. 2011), involved allegations of imprudence and disloyalty related to including company stock as an investment option.

IV.     **THE COLLECTION OF PARTICIPANT PREMIUMS IS NOT A PROHIBITED TRANSACTION.**

Plaintiff attempts to save her prohibited transaction claim by construing the collection of participant premiums as an "ongoing reallocation of Plan assets for the employer's benefit." (Opp. at 17.) However, her claim still fails because Defendants' ministerial collection of participant premiums is not a prohibited transaction. As previously noted, the SPD plainly explains how premiums will be collected and used to pay for participant benefits:

> Walgreens and team members both contribute to the Plan. Funding for this Plan consists of an aggregation of the funding from team members and the Company for all benefits. For some Benefit Programs, benefits are paid solely by the Company; others are paid by a Combination of Company and team member contributions. . . .
>
> For Self-Insured benefits, Walgreens pays fees to the third-party administrators to process claims for the Benefit Programs. Also for Self-Insured benefits, any required employee contributions will be deemed to be applied to pay benefits under the Plan. Employer contributions pay the remaining cost of benefits and all administrative expenses under the Plan.

(ECF No. 24-4 at 26.) ERISA prohibits transactions between "[the] plan and party in interest," 29 U.S.C. § 1106(a), and targets "transactions" that fiduciaries cause the plan to "engage" in—in particular, "transactions" that are deemed "likely to injure the pension plan." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241-42 (2000).

As a cafeteria plan, all participant premiums are deposited with general company assets, and the Plan specifically designates them as to be applied to pay benefits under the Plan. This is not a "transaction" involving the Plan. As with the rest of her claims, Plaintiff challenges the terms and structure of the Plan and, in this instance, the ministerial collection of premiums. This is not a fiduciary function or a prohibited transaction under ERISA, and Plaintiff has failed to state a claim for either.

**CONCLUSION**

Defendants respectfully request that the Court dismiss Plaintiff's Complaint.

15

DATED:  June 3, 2025                              Respectfully submitted,

                                                 WALGREEN CO. AND WALGREEN
                                                 HEALTH AND WELFARE COMMITTEE


                                                 By: /s/ *Ada W. Dolph*
                                                     Ada W. Dolph

Samuel Schwartz-Fenwick
Ada Dolph
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois  60606-6448
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000
sschwartz-fenwick@seyfarth.com
adolph@seyfarth.com

*Attorneys for Defendants*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all counsel of

record, as listed below, via the Court's CM/ECF filing system on the 3rd day of June 2025.

> Kimberly Dodson
> Email: kdodson@sirillp.com
> Oren Faircloth
> Email: ofaircloth@sirillp.com
> Siri & Glimstad LLP
> 745 Fifth Ave.
> Suite 500
> New York, NY 10151
>
> Scott Haskins
> Siri & Glimstad, LLP
> 220 West Congress Street
> 2nd Floor
> Detroit, MI 48226
> Email: shaskins@sirillp.com

> /s/Ada W. Dolph
> Ada W. Dolph

17