## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALEXIS J. ROMAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WALGREEN COMPANY and the WALGREEN HEALTH AND WELFARE COMMITTEE,<br><br>Defendants. | Civil Action No.: 1:25-cv-1504<br><br><br>**Judge Steven C. Seeger**<br><br><br>**Magistrate Judge M. David Weisman** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant's notice invites this Court to adopt the reasoning in *Williams v. Bally's Management Gr.,* Case No. 25-cv-147, Doc. No. 21 (Nov. 4, 2025) ("*Bally's*") for resolving some of the issues here. This Court should decline that invitation because *Bally's* is analytically thin and legally flawed on three points implicated here: it misconstrues the "full reward" rule by reading "full" out of the statute and Final Regulations; it collapses statutory protections by treating employer flexibility over *access* windows as license to impose arbitrary restrictions on the *value* of what participants receive based solely on timing of completion; and it misapplies the law to excuse Benefit Guides from the requirement that notice be in "all plan materials" that describe the surcharge or a premium differential. Walgreens' program exhibits each defect, and *Bally's* provides no persuasive basis to condone them.

### A. The "Full Reward" Rule Guarantees Equal *Value*, Not Prospective-Only Relief.

1

ERISA requires that the full reward be "made available to all similarly situated individuals," and the Departments (DOL, HHS, and Treasury) have long explained that once a participant completes a reasonable alternative standard, the plan must provide the same economic value that non-smokers received for the entire plan year. 78 Fed. Reg. 33158 ("Final Regulations"), 33163. That includes make-whole relief for months in which surcharges were already paid. The Final Regulations say this unequivocally. *Id.* (example of a participant who completes the alternative on April 1 and must receive the January–March refund). Nothing in the statute or Final Regulations authorizes employers to offer only prospective relief or to withhold the portion of the reward depending on when the participant satisfies the alternative standard during the Plan year.

*Bally's* "matter of perspective" approach ignores the statutory word "full," transforms a guaranteed reward into a limited time offer, and sanctions cutoffs that let employers pocket participant-paid surcharges while offering only prospective relief. Further, *Bally's* interpretation—that prospective-only relief encourages timely completion—has already been rejected by the Departments, which have made clear for two decades that timing penalties are incompatible with the full reward mandate. The "full reward" language, in both the statute and the Final Regulations, protects the value of what participants receive. Walgreens' design flouts that requirements by impermissibly tying completion to the *value* of what participants receive.[1]

### B. Walgreens' "Benefits Guide" Strategy Violates the "All Plan Materials" Notice Requirement.

Here, Walgreens attempts the same shell game *Bally's* excused: it announces the surcharge

---

[1] The frequency-of-opportunity rule governs *access*—how often an employer must let participants attempt the alternative standard. The full reward rule governs *value*—what participants receive once they complete it. While employers have flexibility over *access*, they do not have authority to impose restrictions that decrease the value of the reward participants receive upon completion. By tying the value of the reward to when in the year a participant completes the program, Defendants violate the "full reward" rule. That timing-based reduction is precisely the discriminatory structure Congress and the Departments sought to prohibit.

(i.e., premium differential) and speaks to tobacco cessation "support" in participant-facing materials while burying or omitting the mandated physician-accommodation disclosures, then points to separate documents participants do not actually receive or consult to claim compliance. The statute and Final Regulations require that, wherever plan materials describe the wellness program or the premium differential, those materials must include notice with contact information for accessing the alternative standard and that participants may satisfy the alternative standard through their own physician's recommendations.[2] Participant-facing materials like Benefits Guides, enrollment guides, and annual notices are exactly where participants encounter the surcharge and program. *Bally's* wrongly excused "mere mentions" of the surcharge in Benefit Guides from the notice mandate. That conclusion conflicts with the anti-discrimination purpose and invites employers to launder critical disclosures through documents that are not provided to participants while omitting them from the actual communications participants rely upon. This Court should reject that approach and require Walgreens to provide the mandated physician-accommodation notice in all plan materials describing the surcharge and program.

### C. *Bally's* Misconstrues ERISA §§ 502(a)(2) and 409 By Ignoring the Profits Disgorgement Prong and the Plan-Wide Relief Sought.

*Bally's* erred by treating ERISA § 409(a) as if it imposes a single condition: "losses to the plan." That is not the statute Congress wrote, and it misconstrues the holdings in *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) and its progeny.[3] Section 409(a) creates two distinct

---

[2] Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure").

[3] The *Bally's* court relied on *N.R. v. Raytheon Co.*, 24 F.4th 740, 750 (1st Cir. 2022), which in turn invoked *Russell* and *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008), but decisions like *Raytheon* have improperly reframed those precedents into something the Supreme Court never held: that a § 502(a)(2) claim requires pleading a distinct "loss to the plan." *Russell* merely rejected individual, extracontractual damages and underscored that § 409 remedies must run to the plan. It did not hold—and could not be read to hold—that the presence of individual damages forecloses

fiduciary liabilities: making good "losses to the plan" and restoring "any profits of such fiduciary which have been made through use of assets of the plan." *Bally's* acknowledged the profits prong, but then disregarded it, collapsing the statute into a one-prong "loss" rule and dismissing the claim for lack of "plan injury." It is error to excise half of § 409(a)'s remedial architecture. *Bally's* compounds the mistake by invoking a "self-funded offset" theory to defeat redressability, speculating that any recovery to the plan could be neutralized by future contribution adjustments. That speculation cannot defeat Article III. ERISA's remedies run to the plan, and a breaching fiduciary's supposed ability to manipulate future funding does not render those remedies non-redressable. Courts should reject this approach because it collapses ERISA's remedial scheme and would immunize fiduciaries of self-funded plans from § 502(a)(2) scrutiny.

In short, *Bally's* provides no persuasive basis to grant Defendants' motion to dismiss because the court misread the "full reward" rule, stretched the "merely mention" exception to include critical participant-facing communications discussing tobacco surcharges that participants actually rely on, and failed to properly analyze and apply the exiting law on breach of fiduciary duty claims under ERISA § 502(a)(2) to the plaintiff's allegations. Walgreens' program contains many of these defects (and more) by omitting critical information from its Benefit Guides and imposing arbitrary value restrictions pegged to completion timing. ERISA and the Final Regulations foreclose these practices. This Court should decline to follow *Bally's*.

---

plan-wide relief, or that § 409(a)'s profits prong disappears whenever participants are injured. *LaRue* expressly reaffirmed that the proper focus is on the relief sought, not on whether the plaintiff alleges some separate, freestanding injury to the plan itself. *Raytheon* improperly stretched *Russell* beyond recognition. *Bally's* simply echoed that dicta. This Court should not perpetuate a judicial gloss that the Supreme Court has never endorsed.

Dated: November 12, 2025            **SIRI & GLIMSTAD LLP**

/s/ *Oren Faircloth*
Oren Faircloth (*pro hac vice*)
Mason A. Barney
Scott Haskins (*pro hac vice*)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (929) 677-5181
E: ofaircloth@sirillp.com
E: mbarney@sirillp.com
E: shaskins@sirillp.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Oren Faircloth*
Oren Faircloth.